Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY, <br><br> Plaintiff, <br><br> vs. <br><br> FORESCOUT TECHNOLOGIES, INC., MARK JENSEN, YEHEZKEL YESHURUN, ENRIQUE SALEM, THERESIA GOUW, JAMES BEER, MICHAEL DECESARE, DAVID G. DEWALT, ELIZABETH HACKENSON and KATHY MCELLIGOTT, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Forescout Technologies, Inc. ("Forescout" or the "Company") and the members of Forescout's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Forescout will be acquired by an investor group led by Advent International Corporation ("Advent") and Crosspoint Capital Partners ("Crosspoint") through Advent's affiliates Ferrari Group Holdings, L.P. ("Parent") and Ferrari Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On February 6, 2020, Forescout issued a press release announcing that it had entered into an Agreement and Plan of Merger dated February 6, 2020 (the "Merger Agreement") to sell Forescout to Advent. Under the terms of the Merger Agreement, each holder of Forescout common stock will receive $33.00 in cash for each share of Forescout common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $1.87 billion.

3. On March 3, 2020, Forescout filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Forescout stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); and (ii) Morgan Stanley's and Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Forescout's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Forescout.

9. Defendant Forescout is a Delaware corporation, with its principal executive offices located at 190 West Tasman Drive, San Jose, California 95134. The Company delivers device visibility and control to enable enterprises and government agencies to gain complete situational

- 3 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

awareness of their environment and orchestrate action. Forescout's common stock trades on the NASDAQ Global Market under the ticker symbol "FSCT."

10. Defendant Mark Jensen ("Jensen") has been a director of the Company since May 2013.

11. Defendant Yehezkel Yeshurun ("Yeshurun") has been a director of the Company since April 2000. Defendant Yeshurun previously served as Chair of the Board from September 2001 to July 2003.

12. Defendant Enrique Salem ("Salem") has been a director of the Company since September 2013.

13. Defendant Theresia Gouw ("Gouw") serves as Chair of the Board and has been a director of the Company since July 2001.

14. Defendant James Beer ("Beer") has been a director of the Company since August 2016.

15. Defendant Michael DeCesare ("DeCesare") has been President, Chief Executive Officer ("CEO") and a director of the Company since March 2015.

16. Defendant David G. DeWalt ("DeWalt") has been Vice-Chair and a director of the Company since June 2015.

17. Defendant Elizabeth Hackenson ("Hackenson") has been a director of the Company since June 2019.

18. Defendant Kathy McElligott ("McElligott") has been a director of the Company since June 2019.

19. Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20. Headquartered in Boston, Massachusetts, and founded in 1984, Advent is one of the largest and most experienced global private equity firms. With offices on four continents, it maintains a globally integrated team of more than 200 investment professionals, focused on buyouts and growth equity investments in five core sectors. Since initiating its private equity strategy in 1989, Advent has invested $48 billion in over 350 private equity investments across 41 countries, and as of September 30, 2019, managed $56.6 billion in assets.

21. Crosspoint is a private equity investment firm headquartered in Woodside, California, focused on the cybersecurity and privacy categories.

22. Parent is a Delaware limited partnership and an affiliate of Advent.

23. Merger Sub is a Delaware corporation and a wholly owned indirect subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

24. Founded in 2000 and headquartered in San Jose, California, Forescout is the leading provider of device visibility and control solutions. The Company's unified security platform enables enterprises and government agencies to gain complete situational awareness of their extended enterprise environment and orchestrate actions to reduce cyber and operational risk. Forescout products deploy quickly with agentless, real-time discovery and classification of every IP-connected device, as well as continuous posture assessment. As of December 31, 2019, more than 3,700 customers in over 90 countries rely on Forescout's infrastructure-agnostic solution to reduce the risk of business disruption from security incidents or breaches, ensure and demonstrate security compliance and increase security operations productivity.

25. On February 6, 2020, Forescout announced its fourth quarter and full year 2020 financial results, including fourth quarter revenue of $91.3 million, compared to $84.7 million in the fourth quarter of 2018, and full year revenue of $336.8 million, compared to $297.7 million in the full year 2019. License revenue for the quarter was $48.4 million, an increase of 2% over the fourth quarter of 2018. Subscription revenue was $37.6 million, an increase of 14% over the fourth quarter of 2018, and professional services revenue was $5.3 million, an increase of 23% over the fourth quarter of 2018. Defendant DeCesare commented on the results, stating:

> Our results for the fourth quarter reflect strength across many parts of the business as we continue to see strong demand for device control and visibility across all segments of the market. We expanded our market footprint with the addition of 160 new logos and 3.2 million new devices under management and we are making progress toward our transition to a more ratable revenue model, as demonstrated by a greater mix of term-based license contracts and strong initial results for eyeSegment, our first software as a service product. We continued to face macro and execution challenges in EMEA, however, we are taking steps to improve those variables that are within our control. Finally, we are excited about the transaction we announced today with Advent International, which positions us for long-term success in the large and growing market for device visibility and control.

**The Proposed Transaction**

26. On February 6, 2020, Forescout issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> SAN JOSE, Calif., Feb. 06, 2020 (GLOBE NEWSWIRE) -- Forescout Technologies, Inc. (NASDAQ:FSCT, "Forescout"), the leader in device visibility and control, today announced that it has entered into a definitive agreement under which Advent International ("Advent"), one of the largest and most experienced global private equity investors, will acquire all outstanding shares of Forescout common stock for $33.00 per share in an all-cash transaction valued at $1.9 billion. Advent will be joined by Crosspoint Capital Partners ("Crosspoint Capital"), a private equity investment firm focused on the cybersecurity and privacy industries, as a co-investor and advisor.
>
> The purchase price represents a premium of approximately 30% over Forescout's closing share price of $25.45 on October 18, 2019, the last full trading day prior to the release of the 13-D filings by Corvex Management L.P. and Jericho Capital Asset Management L.P. on October 21, 2019, which disclosed they had formed a partnership to approach Forescout and accumulated a combined 14.5% ownership in the company. Upon completion of the transaction, Forescout will become a private company with the flexibility to continue investing in the development and deployment of leading-

edge cybersecurity products and solutions that serve the evolving needs of enterprise customers. CEO and President Michael DeCesare will continue to lead the company, and Forescout will continue to be headquartered in San Jose, California.

"Forescout has established itself as a leader in device visibility and control, with the most advanced platform in the market," said Michael DeCesare, CEO and President, Forescout. "We are still in early innings of a large market opportunity as every organization needs visibility into what is connecting to their network and how to mitigate against high risk devices, including non-traditional IoT and OT devices. This transaction represents an exciting new phase in the evolution of Forescout. We are excited to be partnering with Advent International and Crosspoint Capital, premier firms with security DNA and track records of success in strengthening companies and supporting them through transitionary times. We look forward to working with Advent and Crosspoint Capital to advance our strategic objectives and want to thank our employees for their continued hard work and commitment to Forescout."

"We are pleased to have reached this agreement with Advent, which delivers significant immediate value to shareholders, and positions Forescout to continue meeting and exceeding the expectations of our customers," said Theresia Gouw, Chair of the Forescout Board. "This transaction, which is the result of a robust process conducted by the Board of Directors with the assistance of independent legal and financial advisors, is a testament to the value Forescout has created and the reputation our team has built. In making its determination, the Board of Directors considered the likely volatility associated with the business model transition to ratable revenue recognition, changes to our go-to-market initiatives, particularly in EMEA, and timing of significant eight-figure deals, while managing to quarterly street estimates as a publicly traded company. We are confident that this transaction is the best path forward for Forescout and our stakeholders."

"Forescout is an ideal partner for Advent — as it's a mission-critical business positioned to capitalize on key tech megatrends," said Bryan Taylor, head of Advent's technology investment team and a Managing Partner in Palo Alto. "The company has differentiated itself from its core competitors with its proprietary, agentless technology, making it ideal for large, complex organizations in a rapidly evolving cyber risk landscape. In partnership with Greg Clark and the Crosspoint Capital team, Advent is thrilled to work with Forescout to build on its record of innovation and continue delivering world-class cybersecurity solutions to customers for years to come."

"As enterprises continue to shift to the cloud and decentralized networks, today's chief information security officers are looking for secure solutions to increase visibility and provide orchestration, making their network controls more seamless," said Greg Clark, Managing Partner at Crosspoint Capital. "Forescout's platform is already ahead of the curve, and we believe we can further advance the company's market position by applying the collective experience and expertise in cybersecurity software of the Advent and Crosspoint Capital team."

**Transaction Details**

- 7 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Under the terms of the agreement, which has been unanimously approved by the Forescout Board of Directors, Forescout shareholders will receive $33.00 in cash for each share of common stock they own.

The agreement includes a 30-day "go-shop" period expiring on March 8, 2020, which permits Forescout's Board of Directors and advisors to solicit alternative acquisition proposals from third parties. Forescout will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and Forescout does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or is otherwise required.

The transaction is expected to close in the second calendar quarter of 2020, subject to customary closing conditions, including approval by Forescout shareholders and receipt of regulatory approvals. Upon completion of the transaction, Forescout common stock will no longer be listed on any public market.

**Insiders' Interests in the Proposed Transaction**

27.     Forescout insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Forescout.

28.     Notably, Forescout insiders stand to reap substantial financial benefits for securing the deal with Advent.  Pursuant to the Merger Agreement, all outstanding options, performance-based stock units ("PSU"), and restricted stock units ("RSU") will vest and convert into the right to receive the Merger Consideration.  The following tables summarize the value of the Company options, PSUs and RSUs that Company insiders stand to receive:

| Name | Shares Held Directly[1] | | In-the-Money Forescout Options[2] | | Forescout RSUs and Forescout PSUs[3] | | Total ($) |
|---|---|---|---|---|---|---|---|
| | Number of Shares (#) | Value of Shares ($) | Number of Shares Subject to Vested Portion (#) | Value of Shares Subject to Vested Portion ($) | Number of Shares (#) | Value ($) | |
| Michael DeCesare | 355,316 | 11,725,428 | 505,964 | 11,990,977 | 296,954 | 9,799,482 | 33,515,887 |
| Christopher Harms[4] | 124,726 | 4,115,958 | 22,212 | 513,541 | 134,295 | 4,431,735 | 9,061,234 |
| Pedro Abreu | 22,576 | 745,008 | 142,340 | 3,410,023 | 96,602 | 3,187,866 | 7,342,897 |
| Darren J. Milliken | 327 | 10,791 | 67,740 | 1,594,952 | 37,073 | 1,223,409 | 2,829,152 |
| Theresia Gouw[5] | 90,873 | 2,998,809 | — | — | 4,885 | 161,205 | 3,160,014 |
| James Beer | 13,233 | 436,689 | — | — | 29,885 | 986,205 | 1,422,894 |
| David DeWalt | 437,863 | 14,449,479 | — | — | 55,435 | 1,829,355 | 16,278,834 |
| T. Kent Elliott[6] | 30,835 | 1,017,555 | — | — | — | — | 1,017,555 |
| Elizabeth Hackenson | — | — | — | — | 13,833 | 456,489 | 456,489 |
| Mark Jensen | — | — | 95,139 | 2,537,111 | 4,885 | 161,205 | 2,698,316 |
| Rami Kalish[7] | — | — | — | — | — | — | — |
| Kathy McElligott | — | — | — | — | 13,833 | 456,489 | 456,489 |
| Enrique Salem[8] | 321,873 | 10,621,809 | — | — | 4,885 | 161,205 | 10,783,014 |
| Hezy Yeshurun[9] | 320,942 | 10,591,086 | — | — | 4,885 | 161,205 | 10,752,291 |

29.  Moreover, if they are terminated in connection with the Proposed Transaction, Forescout's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($)[4] |
|---|---|---|---|---|
| Michael DeCesare | 1,000,000 | 9,799,482 | 28,831 | 10,828,313 |
| Christopher Harms | 725,000 | 4,431,735 | 28,831 | 5,185,566 |
| Pedro Abreu | 750,000 | 3,187,866 | 28,831 | 3,966,697 |
| Darren J. Milliken | 495,175 | 1,223,409 | 9,190 | 1,727,774 |

**The Proxy Statement Contains Material Misstatements or Omissions**

30.  The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Forescout's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

31.  Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Morgan Stanley; and (ii) Morgan Stanley's and Company insiders' potential conflicts of interest.

***Material Omissions Concerning the Company's Financial Projections and Morgan Stanley's***

*Financial Analyses*

32. The Proxy Statement omits material information regarding Company management's financial projections.

33. For example, the Proxy Statement fails to disclose the Company's tax savings from net operating loss utilization over the projection period, for each of the "Target Plan" and "Alternate Plan."

34. Additionally, the Proxy Statement omits material information regarding Morgan Stanley's financial analyses.

35. The Proxy Statement describes Morgan Stanley's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Forescout's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

36. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) quantification of the inputs and assumptions underlying the discount rate of 10.8%; (iii) projected net cash; and (iv) the fully diluted shares of Company common stock used in the analysis.

37. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the value of the Company's existing and newly created tax attributes; (ii) the terminal values for the Company for each of the Target Plan and Alternate Plan; (iii) the metric the perpetuity growth rates were applied to in calculating the terminal values for the Company, and quantification thereof; (iv) the implied terminal multiples resulting from the analysis; (v)

quantification of the inputs and assumptions underlying the discount rates ranging from 9.8% to 11.8%; (vi) Forescout's cash and debt as of December 31, 2019; and (vii) the fully diluted shares of Company common stock as of February 3, 2020, utilized in the analysis.

38. Without such undisclosed information, Forescout stockholders cannot evaluate for themselves whether the financial analyses performed by Morgan Stanley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Morgan Stanley's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

39. The omission of this material information renders the statements in the "Financial Forecasts" and "Opinion of Morgan Stanley" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Morgan Stanley's and Company Insiders' Potential Conflicts of Interest***

40. The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Morgan Stanley.

41. The Proxy Statement sets forth:

> In the two years prior to the date of Morgan Stanley's opinion, Morgan Stanley and its affiliates have provided financial advisory and financing services for Forescout and have received approximately $3.1 million in fees in connection with such services. In the two years prior to the date of Morgan Stanley's opinion, Morgan Stanley and its affiliates have provided financial advisory and financing services for Advent and its affiliates (an affiliate of Advent is the ultimate controlling stockholder of Parent) and have received approximately $30.0 million to $50.0 million in fees in connection with such services. Morgan Stanley may also seek to provide financial advisory and financing services to Advent, Parent and Forescout and their respective affiliates in the future and would expect to receive fees for the rendering of these services.

*Id.* at 59. The Proxy Statement, however, fails to disclose the specific financial advisory and financing services Morgan Stanley and its affiliates have provided to Forescout and Advent and its affiliates.

42. Additionally, the Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

43. The Proxy Statement sets forth:

> As of the date of this proxy statement, none of Forescout's executive officers have (1) reached an understanding on potential employment or other retention terms with the surviving corporation or with Advent, Parent or Merger Sub; or (2) entered into any definitive agreements or arrangements regarding employment or other retention with the surviving corporation or with Advent, Parent or Merger Sub to be effective following the consummation of the merger. However, prior to the effective time of the merger, Advent, Parent or Merger Sub may initiate discussions regarding employment or other retention terms and may enter into definitive agreements regarding employment or retention for certain of Forescout's employees to be effective as of the effective time of the merger.

*Id.* at 72. However, the February 6, 2020 press release announcing the Proposed Transaction states that defendant DeCesare "will continue to lead the company." Yet, the Proxy Statement fails to disclose the specific details of all employment and retention-related discussions and negotiations that occurred between Advent and Forescout executive officers and directors, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Advent's proposals or indications of interest mentioned management retention, consulting arrangements, cash, stock and co-investment opportunities, or equity participation in the combined company.

44. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

45.     The omission of this material information renders the statements in the "Background of the Merger" and "Interests of Forescout's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

46.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Forescout will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

47.     Plaintiff repeats all previous allegations as if set forth in full.

48.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

49.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley, and Morgan Stanley's and Company insiders' potential conflicts of interest.  The

defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

51. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

52. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

### COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

53. Plaintiff repeats all previous allegations as if set forth in full.

54. The Individual Defendants acted as controlling persons of Forescout within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Forescout, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

57. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Forescout's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Forescout, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and

    disseminate the material information identified above to Forescout stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: March 17, 2020

**WEISSLAW LLP**
Joel E. Elkins

By: /s/ Joel E. Elkins

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
   -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*